RODNEY E. DRAKE, APPELLANT, V. CHARLES G. MCDONALD, ADMINISTRATOR DE BONIS NON, ET AL., APPELLEES.

FILED SEPTEMBER 28, 1912.   No. 16,757.

Trusts: RESULTING TRUSTS: EVIDENCE: BURDEN OF PROOF. "A resulting trust will not be declared upon doubtful and uncertain grounds; and the burden is upon the one claiming the existence of the trust to establish the facts upon which it is based by clear and satisfactory evidence." *Veeder v. McKinley-Lanning L. & T. Co.*, 61 Neb. 892.

APPEAL from the district court for Cherry county: WILLIAM H. WESTOVER, JUDGE. *Affirmed.*

*Duncan M. Vinsonhaler,* for appellant.

*Shotwell & Shotwell* and *Charles G. McDonald, contra.*

LETTON, J.

This is an action to quiet title to 160 acres of land in Cherry county, Nebraska, in the plaintiff. The district court found for the defendants and dismissed the case. Plaintiff appeals.

The contentions made by the plaintiff in this court are, in substance, that the findings and decree are not sustained by the evidence, and that the court erred in admitting testimony as to declaration of ownership of the land by Drake during his lifetime. Of course, if the evidence in behalf of plaintiff failed to establish his right to the relief sought, it is unnecessary to consider the question as to the admission of evidence.

In brief, plaintiff asserts that his father, James N. Drake, appropriated money left by plaintiff's mother, Emma N. Drake, at her death in 1899, to the amount of over $500; that the father soon after bought a stock of groceries in Omaha with this money for the plaintiff; that the business and stock belonged to plaintiff; that the stock and business was afterwards exchanged for the Cherry county land, and the title wrongfully taken by James N. Drake in his own name, in place of that of plaintiff, who is the true owner. He invokes the equitable principle that he is entitled to follow the trust fund and accept it in its changed condition, if he so elects.

James N. Drake is dead. The action is against his heirs and administrator *de bonis non*. The evidence shows that James N. Drake in August, 1899, purchased from one Edwards a stock of groceries in Omaha. He carried on the business in the name of the plaintiff Rodney E. Drake, who was then a boy of about 12 or 13 years of age, for about 7 months, when he disposed of the stock and business to one Joice for $650 in money and 160 acres of Cherry county land. James N. Drake died in February, 1909, leaving surviving him Emma N. Drake, his widow. Drake had been married twice previously. By his first wife he had two children, Rodney E. Drake and Charles Louis Drake. The whereabouts of the latter does not seem to be known, or whether he is yet living.

The testimony as to the fact of Mrs. Drake's possession of money consists of direct testimony by the plaintiff to that effect and testimony as to declarations by James N. Drake. Plaintiff testifies that a few years before his

mother's death she showed him over $500 in money; that this money was kept in the drawer of a commode and in an ordinary pillow. He afterwards said the money was left in the house at the time of his mother's death; but gave as his reason for saying so that it had been shown to him by her, but he could not say that it was a year or a month before. He also said he did not see it after her death. As to the declarations of James N. Drake, the testimony of Edwards, who sold the stock of goods to the father, is that at the time of the sale Drake told him that he was using his boy's money and buying the stock for him. A young woman, now Mrs. Shultz, who assisted in the store and who was then about 19 years of age, testifies that she heard Mr. Drake tell Edwards it was Rodney's mother's money that he was putting in the business. Houliston, the broker who negotiated the subsequent sale from Drake to Joice, testified that the bill of sale was drawn with "R. E. Drake," and "R. E. Drake, by James N. Drake, guardian," as vendors, at Mr. Drake's direction, and that he was told the boy owned the store and the land would be the boy's. On cross-examination, however, Houliston testifies that Drake "claimed that the property was his, but it was in the boy's name; he was doing business in his boy's name." "Q. Did he give you any reason at that time as to why the property was in his boy's name? A. He said he was in a hard row of stumps; he had some judgments against him; he said he could not pay them just now; he said he was going to pay them; he said I understood that business." Mrs. Shultz testifies that when Mr. Drake was in York, a few weeks before he purchased the stock of groceries, he showed her $900 in money, and told her that this money, except $150, "was Susan's money."

On the other hand, it is shown that after the father's death Rodney E. Drake caused to be prepared and presented to the county court a petition asking for administration of his father's estate. At the same time he filed a petition asking that the estate of his mother, Susan E.

Drake, who had died about 10 years before, be closed up. He was appointed administrator of his mother's estate, and in the inventory filed by him as such administrator he listed certain pieces of real estate, but showed no personal property as belonging to her at the time of her death. At that time apparently he had no recollection that his mother had any personal property at the time of her death, because neither in the petition for his appointment nor in his inventory of the estate does he recite this fact. He was also appointed administrator of his father's estate, but he filed no claim against that estate for the money which he now insists he inherited and which he claims his father misappropriated. Furthermore, the mother left insurance in the sum of $500, half of which was payable to her husband, James N. Drake, and half to her son, Rodney E. Drake. The father was appointed guardian of Rodney, took possession of the money, and reported his disposition of it to the county court, the allowance of which report seems to be still pending, so far as the record here shows. No claim was made in these proceedings that the guardian ever acquired any other money of the plaintiff.

Upon considering the whole case, we are of opinion that the most reasonable explanation of the facts is that given Houliston by Drake, that Drake was in debt, that the stock was his, but that he was conducting the business in his son's name. It is shown that Drake had conducted another store in his wife's name some years previously, which he had disposed of, and that in the interim he had carried on no steady business, but had been assessor, and had been engaged in selling mining stock. There is nothing to show from what source Mrs. Drake could or did acquire any money of her own.

In order to establish a resulting trust by parol proof, the evidence must be clear and convincing. Of course, a preponderance is sufficient, but in order to preponderate it must be of such a character that when all the circumstances are taken into consideration, and considering the

frailty of human memory with reference to oral statements made years before, it must satisfy the mind. Any inconsistency between the testimony of the person seeking to establish the trust and his conduct, and any explanation suggested by the evidence for the action of the person whom it is sought to charge as trustee must be considered.

On the whole record, we are satisfied that the district court made no error in holding that the evidence does not justify a decree declaring a resulting trust, and its judgment is, therefore,

AFFIRMED.